at all. Oral argument, 15 minutes per side. Mr. Murphy, for the appellant. Have you reserved some time for rebuttal? I have. I have reserved 5 minutes for rebuttal. Thank you. You may proceed. Thank you. May it please the Court, Brian Murphy, on behalf of the plaintiffs. We have here an appeal of a punitive class action that involves an energy company sending out approximately 3 million robocalls to in excess of 2.8 million consumers. The lower court dismissed the case finding lack of standing, that there wasn't a concrete injury that was presented by the plaintiffs here. We believe we're going to show that that was wrong on three accounts. One, there absolutely was a concrete, real injury here in terms of a multitude of voicemails that were received by the plaintiff. In addition, the lower court just got many facts wrong in terms of the record. It took the position that the plaintiff was alleging that he had received one unsolicited robo, ringless voicemail. When in fact, the complaint alleged four ringless voicemails were received and the deposition testimony showed as many as 11 had been received. Mr. Murphy, I'm sorry to interrupt you, but for purposes of the standing inquiry, do we need to make a factual finding or to review the facts as to the number of calls that were actually made? We don't believe so. We believe quite clearly that it's sufficient for Article 3 standing purposes that a plaintiff has just one simple violation of the DCPA. The district court seemed to take issue in terms of focusing on an allegation of a single violation, but we needed to point out to the court that, in fact, that wasn't even actually accurate. The law is quite clear, but the law of this circuit, we believe, is quite clear that Article 3 standing was present here. And it's notable that the lower court, in reaching its decision, chose to reach for decisions from outside the circuit and, in fact, went against the weight of authority when it comes to Article 3 standing, refusing to follow what we believe was a binding precedent of the 6th and ignoring precedent on the issue from the 2nd, 5th, 7th, 8th and 9th circuits. When it comes to standing, Article 3 standing, the Supreme Court has been very clear that what a plaintiff is required to allege is a concrete injury, in fact, and concrete in that context means only that the injury be real and not abstract. It's not something that's theoretical. It's real. And when it comes to TCPA violations, we believe this court and other courts have found that receiving a call, which is what happened here, adequately meets that condition of concrete injury. When looking at whether or not a concrete injury is present or not, courts look at a couple of things. One, whether Congress conferred a procedural right in order to protect concrete injury. There's no doubt that that happened here, that the TCPA is a comprehensive statutory framework that has ruled telemarketing and illegal telemarketing for approximately 30 years. The second portion of that inquiry is whether or not the harm that is at issue is analogous to harm recognized in common law. And we think that's where the district court really fell down and didn't really get. Here, courts have been quite clear that when it comes to the TCPA, the harm is analogous to what was a common law intrusion upon seclusion. And what particular facts in this case show that harm to this individual plaintiff? Well, both in the complaint and in his deposition, Mr. Dixon testified to the fact that he found it annoying. He found it to be an invasion of privacy. He alleged the calls were frustrating, obnoxious, annoying, and disturbed his solitude. He also alleged that it occupied his telephone. And as anyone who has an iPhone knows, once you get a voicemail, that takes up space on your voicemail system. You have a limited amount of space in terms of voicemail you can receive. And by these folks delivering it directly to his telephone, that was taken up. And that's why, in addition to many of the cases talked when it comes to the TCPA about intrusion upon seclusion, but there have been recent cases that also talk about the common law analog of trespass to chattels. And we think that is particularly applicable here. Did you raise that in your initial briefing? We did not raise that in your initial briefing. We raised that on reply. But again, we think when it comes to standing, we raised the issue of unlawful use of the phone and using up its resources. And it's clear that trespass to chattels is, again, applicable. There's somebody coming into your telephone, taking up your space for their telemarketing purposes here. And again, in this case, the district court talked about, again, one ringless voicemail. But really what transpired here in terms of the big picture was 3 million ringless voicemails were sent to 2.9 million people. This is not a theoretical thing that happened. This happened, and it happened to our client. And it was a little bit disturbing to read. The district court talks about the plaintiff here only having received and read a voicemail. Well, that's neither the allegation or read a text message. That's not the allegation of the complaint, and that's not Mr. Dixon's deposition testimony. What Mr. Dixon talked about in his deposition, he was deposed three years after the case had been filed. He talked about the fact that he didn't have a specific recollection, but he probably listened to the voicemail. And he had recollections of receiving notifications about these series of voicemails, and that his procedure would have been to listen to the voicemail, not simply read some sort of transcription. And again, we don't believe that that's even dispositive one way or another. It's just we think it's clear that the record should be clear in terms of what transpired here. It's somewhat telling that the court just totally attempted to ignore this court's decision, this court's Imhoff decision, which we think is sort of directly on point and which we don't think was in any way modified or affected by either the Spokee or TransUnion decisions. And in that case, as the court I know is well aware, you have a situation where a plaintiff received the facts and the court found that the plaintiff didn't have to show that he had any knowledge of receiving it, or that it printed it out, but that there was a sufficient injury targeted by the PCPA in sending that fact, such that there was sufficient article to the standard. Our belief is that the Imhoff decision is directly on point, has not been upset in any way by any subsequent Sixth Circuit or Supreme Court precedent. And really following the logic of that case leads us to prevailing here on the standing issue. Similarly, we think also directly on point is the Seventh Circuit decision drafted by now Justice Barrett, the Gaddell-Hack versus the AP&T decision, which on this exact issue, and they address it as a single text, which we will buy into just for the purposes of following Judge Adams' logic. We, again, don't think a ringless voicemail is a text. And just on that point, aside from the law of the case argument in our brief, after the close of briefing, there was actually an FCC order, and the site for that is FCC-22-85A1, where the FCC came down with a declaratory ruling in order involving an entity called All About the Message LLC, in which the FCC concluded that ringless voicemail is a call and not a text message for purposes of the PCPA. Would you concede that, is it your position that that satisfies the issue? I think there are some questions about law of the case doctrine for jurisdiction. Would you concede that it is really not applicable in our situation? I would agree that we probably no longer need to even raise that argument, given the FCC's decision. But we do believe strongly, again, the parties, remember, had consented to proceedings before Matthew Lemberg retired. Again, it was our position, though, that we do think it was law of the case, but we do think the FCC order sort of makes that irrelevant in much of it. It's a conclusive statement by the FCC's regulatory agency on the issue. I'll reserve the balance of my time for rebuttal at this point. Thank you. Unless the court has any questions. Judge Davis. Thank you, Judge Batchelder. Mr. Matthews. I'm sorry. Thank you, Your Honor. Matt Matthews for Direct Energy, the Appley. First, let me start where Mr. Murphy did by talking about these three thousand alleged ringless voicemails. And just say, because I realize I'm representing a company that's accused of telemarketing that sometimes comes with some baggage. We deny liability in this case. This isn't the issue before the court. But there's evidence below that Direct Energy insisted that the vendor purchased consents and that Direct Energy paid for these consents and that these calls were in no way, shape or form approved by Direct Energy to be made in violation of any DCPA. Whether a ringless voicemail is a call or isn't, that's the way Direct Energy treated it. And it paid for consents. So with that out of the way. Yes, ma'am. I'd also say that the pointing to the possibility of a class down the road doesn't relieve this plaintiff of his duty to show that he has standing. That's well established by this court's precedent. So the Supreme Court in Spokane and TransUnion made clear that an injury in law is not an injury in fact. And Mr. Dixon's deposition testimony makes clear that he doesn't have an injury. This case, Mr. Dixon's deposition testimony, is what makes this case more narrow and more straightforward than a lot of Article 3 standing cases that involve intangible injuries under alleged intangible injuries under a statute. This case doesn't ask the court to create or change a TCPA rule for standing or to resolve a circuit split about the number of something that is required. Under Spokane and TransUnion, the standard is that a plaintiff must show that their harm, not the harm in theory, but that their harm is similar in kind to one that is traditionally recognized a common law. Now, Mr. Murphy... But not degree, right? But not degree. I mean, the circuits are just overwhelmingly explanatory that degree is not the issue. So it's not whether it's one call or five calls. It's about whether it is comparable to an existing analog, right? Similar in kind. Yes, Your Honor. And I would submit that under Gaddlehack or Cicino, which were facial challenges with very different evidence, that the outcome would have been the same as it is in our case. So the standard here is not that the plaintiff just has to show that, in theory, a TCPA claim is similar to an intrusion upon seclusion. Following TransUnion, the plaintiff has to show that their harm is similar to one that's traditionally recognized a common law. Mr. Dixon's testimony shows that he doesn't have that kind of injury. It was a factual challenge. The court had the ability to weigh the evidence and broad discretion in that. And an important point that I want to clarify on that, because it is relevant here in terms of the number. Because Mr. Dixon's testimony about the one that is related to direct energy is the evidence that was before the court that I believe is dispositive here. The evidence below disproved that Mr. Dixon received more than one about direct energy. When the case started. So your position is degree matters. You have to count the number of calls? No, Your Honor. It's that his testimony about that one RVM, it shows that his alleged harm is different in kind than the other one. So how is his alleged harm different in kind? So it's just the one the RVM records showed that the others were about were from competitors, not direct energy. That's why I said, well, tell me about this one. Why was there no invasion of his privacy? Because Mr. Dixon affirmatively testified that it did not interrupt him, that he did not hear it or see it or feel buzz or notice it at all when it came in. He said and he didn't say I don't remember on that. He said that affirmatively. I did not notice it when I came in. I didn't notice it until several minutes later when I chose to stop whatever it was that I was doing. And to check my mouse. So that doesn't mean that it didn't come. You're correct, Your Honor. My point is that it makes it dissimilar to an intrusion upon seclusion, because even in the Gattle Hat case, the characteristic of the text that now Justice Barrett said made that similar in kind to an intrusion upon seclusion was the buzz or ring of the text, that it demands someone's attention. It demands a decision at that point about whether or not they're going to answer it or do something with it. Here, Mr. Dixon's testimony is I did not realize it. I didn't look at it until later. And only because I was checking my messages. And I don't recall, with respect to that one, if I listened to it in whole or in part, or if I just looked at the transcript and forwarded it on to my attorney. So now you would have to have a plaintiff who could prove that some sound interrupted. I mean, I'm struggling with the test that you're positing because it is so difficult of application. What you would have judges then do is determine, was the noise that you heard loud enough? Was there a buzz? Was there a ring? And yet we now know that the FCC order says that an RVM is a call. So tell me practically how you would apply the test that you're positing. I think what I'm looking at is just the similarities to the intrusion on seclusion. That's the test that the courts have laid down, not me. And to talk about how loud something was is an issue, I think, that gets into the degree. But if there's no interruption at all, that's similar to right now. And there are two elements. There's the intrusion and seclusion. And right now I'm secluded. I'm in a conference room. I'm with you all. I'm not by myself and I'm not suggesting that the test is a person has to be in their home behind closed doors with it locked. But I've taken some steps to focus my attention. And so you think that judges on every one of these cases need to say, where were you sitting? Were you watching television? Were you with someone else in the room? Then how can we do this if you're either worried about how loud the buzz was or whether you were secluded from the world? You know, I would consider I would consider being on the telephone a privacy issue, whether there are 100 people around me or I'm standing in the middle of the night in a quiet room in my home. Because it is my security and my privacy in what I say and hear coming in on my own private phone. I just don't understand how how we would ever apply your test. I think the intrusion is the key part. There has to be some intrusion. Mr. Dixon's testimony, again, it's not that he didn't remember whether or not he heard a ding. He said he did not affirmatively. And I think that bar is pretty low. I mean, before if that's not sufficient, I'm not sure what a plaintiff could ever say that would be insufficient. And if that's the case, then that folds it back into just a bare procedural violation, which we know is not the rule. Well, Mr. Matthews, doesn't it? Isn't it not a bare procedure? Here's the here's what I'm grappling with here. You indicate that there has to be something that's an immediate type of interruption, something that's going to take your attention away, whether it's a ding or a buzz or something like that. Why isn't it enough that at a given time, say four o'clock, I decide I want to sit down and look at or listen to whatever voicemail messages I have. If I have an unsolicited voicemail message from someone that I didn't invite, I didn't want. And it's mixed in with other voicemail messages from loved ones that I do want to hear. Why isn't that an intrusion upon my privacy? That's not something that I want to hear. No, it didn't interrupt another part of my day, but it interrupted me listening to the solicited or the welcome messages that I've received. What is the I guess I'm not getting this analog. I understand that there are cases where there's been an immediate interruption or a sound. But what is it that at least in case law makes you believe that that is a requirement that we have to impose? Yes, Your Honor, because the standard is that the plaintiff has to show that their particular harm is similar in kind to a common law harm. The courts, I think that plaintiff's testimony on a factual challenge is is relevant and that. Well, why isn't the interruption of me listening to my voicemails that I want to listen to? And then all of a sudden getting this unsolicited one in the midst of it. Why isn't that analogous? It's well, one, I would say, again, that in Gattelhack, what the court said was the it's the interruption, the noise, the buzz or the thing that made it similar. The other thing I would say is that this court in Ward has said that a voicemail is not always similar in kind to an intrusion on seclusion. It was a different context. That's an FTCPA case. The court did did compare those two and said that in that context, that voicemail was not similar in kind to an intrusion upon seclusion. So I think that here on a factual challenge that is specific to this evidence that the court would not be setting if it affirms it's not setting a standard that's going to prevent plaintiffs from filing TCPA cases. The plaintiff filed a complaint that said that he had received multiple voicemails from Direct Energy, that they interrupted him, that they took over the use of his phone, that they incurred charges. We didn't move to dismiss at that point. We didn't file a facial challenge. who brings a lawsuit like that, I think just pleading at the way that Mr. Dixon did affirming this court's dismissal order would not necessarily subject that person to a facial challenge. But here, I don't think that it's asking too much for the plaintiff to be able to say it didn't interrupt me in a big way. They don't have to come in and say I was in the middle of dinner and it rang and I remember it vividly. But some evidence that there was some intrusion is required to make it similar in kind to an intrusion upon seclusion. How do you respond to then Judge Barrett's explanation that a few unwanted automated text messages may be too minor an annoyance to be actionable like common law. But then she goes on to conclude, but such texts, nevertheless, pose the same kind of harm that common law courts recognize a concrete harm that Congress has chosen to make legally cognizable. I mean, isn't that the answer to your argument? No, Your Honor, because, again, it's a facial challenge. It didn't involve any of the testimony from a plaintiff like we have here that affirmatively said it did not interrupt me. And there the court was assuming that there was a ding or a buzz that had been the distraction, had been the intrusion. So there it wasn't the number that Judge Justice Barrett was focused on. And she said degree doesn't matter. She said kind. And what she pointed to in discussing the kind of intrusion that makes it similar to that harm is the noise or the light or the buzz or something that distracts. I thought part of her argument was it was the nature of it as unsolicited. Again, I don't know how that can be the standard without it just becoming a procedural violation that if that is it, then that doesn't require the plaintiff to come forward with any other. Well, if that's your argument, then if I have 10, 15 calls and I go home at night and I and I'm sitting down and I and I'm trying to clear out my phone and I have 10 unsolicited calls. That I did not want. That's not enough under your argument because I'm doing it at a time that I'm not interrupted and I'm choosing to open them up. Are we talking about voicemails or calls? Well, we're either. I mean, let's say it's it's the voicemail message. Are we now going to trim it down to? Well, if you read the the text, then it's not an intrusion. But if you listen to the voicemail message, it is an intrusion. I'm really concerned about the ability or the need for judges to make these kind of fine line distinctions when what we're really talking about is invasion of my. How does the restatement call it? This is intrusion upon seclusion claims vindicate people's right to be let alone. I want to protect and Congress chose to protect a consumer's right to be let alone. Isn't that really the test? I think that it's it's a little bit more than than just to be let alone. I guess when I look at the comments of the restatement, they all involve a degree of disturbance that I'm I'm demanding someone's attention or immediately. And the restatement, of course, goes much further in degree. It's not an issue of degree. But but in terms of similar in kind, the the voicemail that was left without the plaintiff noticing it that he could deal with on his own time doesn't constitute the similar kind of harm. Now, under your scenario with a lot, that might be something else. If if so, where do we draw the line as judges? I mean, I mean, we have to count them. Would you posit a test that would say five are enough, but four are too few? No, Your Honor, what I'm saying is, if the voicemail box is filled up, that might be a different kind of harm that if it took over the voicemail box, that might be a trespasser channel. That's more similar in kind of that. But in terms of the intrusion, I don't think that that the one voicemail that is an issue here is similar in kind to that because because of Mr. Dixon specific testimony. I think that this is a very fact specific case on a factual challenge after much discovery was taken. And Mr. Dixon had every opportunity to add to his deposition testimony to clarify it, to expand on it. That I don't think that's a high bar for for a plaintiff in these kind of cases where it also could potentially result in just crippling liability for a defendant. I see your time is up. Thank you. Thank you. Rebuttal, Mr. Murphy. Thank you. It's interesting. They keep hammering home the idea that the plaintiff didn't notice the message. Well, I guess he didn't notice it until he noticed it. Apparently this disconnect between, you know, he didn't hear a ding. And I would disagree that that's actually his testimony. I think he didn't recall this specific instance. He definitely testified in his deposition that he found these messages annoying and an invasion of his privacy. And at some point, he had to listen to the messages or read the message. I don't think it matters either way. But that is very much an intrusion into one's seclusion. If you come into my cell phone, which I think most people sort of keep closer to their best than anything, without my permission or my consent and leave a message, I don't know how that's not an intrusion into my seclusion. It's interesting. In the Gattlehack case, Judge Barrett, when talking about Congress's judgment on these things, he makes reference to the distinguishing thing being the ding or the ring. That's really not that. That was mentioned in a footnote. But I think the heart of what they were talking about in that case was that Congress decided that automated telemarketing can pose the same type of harm to privacy interests, which is everyone will be overwhelmed with these kind of automated text messages, automated voicemails that will not allow any of us to use our phones. And it's not hard to avoid sort of liability for that kind of thing. It's not afraid of horribles that will happen. All that needs to happen is you don't send these messages to people for whom you do not have expressed prior written consent. If you get people's consent, you can send them voicemails, you can send them text messages, and it's not invading their privacy. I also think it's interesting that Mr. Matthews conceded that if the voicemail box had been filled up, that that would perhaps show a trespass to channels. But why, if the voicemail box allows 50 and you're taking up one of those slots, why hasn't that already happened? Which is now I can, you know, I paid for 50 messages, now I only have the right to get 49 more. But that's neither here nor there. We think the intrusion upon seclusion clearly provides a basis for standing in this case. It's very straightforward, we believe, for this circuit to file, the vast majority of the other circuits in terms of how to address standing. I think very much when we look at intrusion upon seclusion, again, we believe the defendants are arguing degree and not time. It's not about that what you experience has to be the same as one of those courts, it just has to be the same time. If I had to make out all of the prerequisites for the restatement when it came to these issues, then there would be no point in going through the analysis in terms of whether or not they are similar in time and not degree. If the court has any questions, I'm happy to answer them. But one other thing I would point out, if we did make a request, we believe that the case, if the court decides to correct an interest standing, we would respectfully request a reassignment on the case should it go back below. We believe the district court judge in his ruling was dismissive of plaintiff's claims to a degree that we think would be difficult moving forward. Excuse me, counsel. What is your authority for saying that when a district court rules against you and gets reversed, the case should be taken away from him? I believe our issue is with his description of the plaintiff's damages here in terms of receiving the call as de minimis. And when it comes to the standard for reassignment, it's really about an appearance of justice issue. And we believe that this makes that out. And that's why we made the request. Are there any more questions? None for me. Judge Batchelder? Thank you. That's the only argument we have today because it's on video. So you may adjourn court. Thank you. This honorable court is now adjourned.